KANSAS CITY, MEMPHIS & BIRMINGHAM RAILROAD COMPANY *v.* W. L. LACKEY.

1. RAILROADS. *Overflow of surface water. Current. Damages.*

    A railroad company opening a narrow trestle, through which water, accumulated for a great distance along one side of its track, pours upon adjoining land, causing the water thereon in times of overflow to be deeper and the current much more swift than it otherwise would be, is liable for the damages occasioned thereby. Whether this is called overflow or surface water is immaterial, for one cannot thus accumulate and injuriously discharge even surface water on the land of another. *Railroad Co.* v. *Miller*, 68 Miss., 760.

2. SAME. *Condemnation. Damages paid. Improper construction.*

    The company is not relieved from liability for such damages because of having made compensation to the landowner under condemnation proceedings when its road was built. Such compensation only embraces damages arising from the *proper* construction of the road. *Sinai* v. *Railway Co.*, 71 Miss., 547, cited.

FROM the circuit court of Lee county.

HON. NEWNAN CAYCE, Judge.

Appellee recovered judgment against the railroad company in the court below for $275. Hence this appeal. The opinion sufficiently states the facts.

*Wallace Pratt* and *Buchanan & Minor*, for appellant.

We submit that the right of way obtained by condemnation includes the right to do everything within its limits necessary for the proper construction and maintenance of the railroad. The compensation made is understood to cover all the damages naturally arising and reasonably expected to flow from the

proper construction and maintenance of the road. *Hannaher* v. *Railroad Co.*, 37 N. W. Rep., 721; 2 Wood's Ry. L., §§ 258, 275, and notes; *Morrisey* v. *Railroad Co.*, 58 Am. & Eng. R. R. Cas., 637.

The fact of the trestle being in appellant's field, and that the water passes through upon his land in a different manner from what it did before the construction of the road, is no evidence of improper construction for which recovery can be had. Taking into consideration the topography of the land and the other facts in evidence, the court must conclude that the damages, if any, were inevitable, and such as would naturally and necessarily result from the proper construction of the road. In times of high water, the overflow from the creek would naturally go in the direction of the railroad, and, unless there was an outlet, the result would be, first, to cover the land between the railroad and the creek with water, and, next, to break the railroad embankment or overflow it. If there was no trestle, the landowners on the north side of the railroad would be damaged, and would have a right of action against the company. The fact that the plaintiff owned the land on both sides of the road and was willing for the water to be confined on the north side so as to protect his land on the south, is not to be considered.

In determining whether the railroad is properly constructed, it is necessary to consider the location and condition of the land on both sides of the road. The engineer must also take into consideration the safety of travel over the road. The contention of appellee is not that the openings were not left at the right place, but that no openings at all should be left. All the land was subject to overflow before the railroad was constructed. The only way to construct the road so as not to change the natural conditions, would have been to trestle the entire bottom at this point. Of course, this is impracticable.

In determining whether or not the road was properly constructed, the court will consider the interests of all parties owning land on or near the railroad at the point in question,

and the damages that would result should this trestle be closed. In *Railroad Co.* v. *Miller*, 68 Miss., 760, the action of the railroad company in collecting water in ditches and carrying it for long distances and discharging it upon the land of another, was condemned. No such case was presented here. Taking into consideration the nature of the land, which usually overflowed in times of high water, the character of the openings left, together with the inevitable result of the overflow and the breaking of the railroad embankment without such openings, there can be no question of the proper construction of the road. We submit that the court must say that there was no proof upon which to found a verdict, and that a new trial should have been granted.

*J. Q. Robins* and *J. L. Finley* on the same side.

*J. A. Blair* and *Brame & Alexander*, for appellee, filed separate briefs, as to the question decided by the court making the following points:

1. The evidence shows that before the construction of the railroad, plaintiff's land, though subject to overflow, was easily cultivated, and made good crops. The water would spread evenly over the land possibly a foot deep, and recede without injuring the crops or preventing cultivation. On the construction of the road, which runs for a long distance through the valley without proper openings, a narrow trestle was left so as to empty the overflow water accumulated on the north side of the road with great force on plaintiff's land on the south. The water thus accumulated, to a depth of several feet, was discharged on plaintiff's land with great force, thereby causing the injury complained of. The railroad is built along the level valley of Town Creek with a view to economy, and in order to prevent the trouble and expense of grading, which would be necessary in building through the hills. In thus utilizing the valley, it was incumbent on defendant to have due regard to

the effect its roadbed would have upon the adjacent lands.   It was easier and cheaper to build the road by throwing up a dirt embankment than by building trestles, and sufficient openings were not left, and the result was injury to plaintiff's land just below the narrow trestle in question.   For such injury, thus unnecessarily caused, plaintiff was clearly entitled to recover. *Railroad Co.* v. *Miller*, 68 Miss., 760; *Sinai* v. *Railway Co.*, 71 *Ib.*, 547.   It is immaterial whether we call this surface water or not.

2.  The novel proposition is asserted by opposite counsel that in condemnation proceedings by which a narrow strip of land for the right of way was taken, such damages as are claimed here were considered and paid.   This contention is without support.   In the condemnation proceedings, only such injury was considered as would necessarily and directly result from the proper construction of the road.   Damages resulting from an unlawful or improper construction were not anticipated or included, and could not have been proved.   *Drake* v. *Railway Co.*, 63 Iowa, 302; *Railway Co.* v. *Watchter*, 123 Ill., 440; *Railway Co.* v. *Thillman*, 143 *Ib.*, 127; *Adams* v. *Railway Co.*, 110 N. C., 325; *Whitcomb* v. *Railway Co.*, 25 Vt., 49; 1 Redf. Am. Ry. Cas., 296; *Railroad Co.* v. *Caruth*, 51 Miss., 77; *Sinai* v. *Railway Co.*, *supra.*

Argued orally by *J. W. Buchanan*, for appellant, and *L. Brame*, for appellee.

WOODS, J., delivered the opinion of the court.

The evidence in this case shows with reasonable certainty that the roadbed of appellant's railway rests upon an embankment extending through the entire farm of appellee and for an undisclosed distance on both sides.   Town Creek.is a considerable stream running through the valley in which the farm lies, and the line of the railway runs, in general terms, parallel with the creek and separated from it in distances varying from 200 to

600 feet.    Between the lands shown to have been damaged and
Town Creek, runs the railway line on the continuous embank-
ment before referred to.    Before the construction of the rail-
road in 1886, and afterward, until the cutting of its embank-
ment and the putting in by the appellant of the trestle in its
roadbed in appellee's farm, good crops were uniformly made,
notwithstanding the fact of the overflow of the lands by waters
from the creek in time of freshet.    These overflows spread
gently and evenly, to the depth of about twelve inches, over
the lands, and speedily, and without damage to the soil or its
productive capacity, flowed off.

In the year 1889, the trestle complained of was put in, and
about fifteen acres of the cultivated field has been rendered use-
less ever since, by reason of the waters flowing through this tres-
tle with great force and in large volume on appellee's place.
From the nearest trestle in the embankment on the north
(about 1,200 yards) to the nearest trestle in the embankment
on the south (about a quarter or half mile) the trestle in the em-
bankment in appellee's field affords the only way of escape for
the overflow waters from Town Creek, dammed by the long em-
bankment.    Through this opening (sixteen feet in width), the
confined overflow waters pour, and the entire waters which, be-
fore the construction of the railway's embankment, gently and
evenly spread out over all of appellee's field, now are discharged
through this single outlet in great quantities and with much
violence upon the few acres adjacent to the trestle, whereby, it
is manifest, the appellee has been really damaged.    Call the
waters thus dammed and discharged through this small trestle
overflow or surface waters, and the merits of the controversy
will not be at all affected, for one may not collect surface water
and discharge it injuriously upon the lands of another.    This
point is distinctly settled in *Railroad* v. *Miller*, 68 Miss., 760.

The contention of appellant's counsel that no recovery should
be had in this case because of compensation once made the owner
of these lands in condemnation proceedings, is not sound.    In

the condemnation proceedings, the owner received compensation from the railroad company only for such damages as he would sustain by the proper construction of its line. Neither the owner nor the commissioners who condemned the right of way and awarded compensation, would have been justified, the owner in asking, or the commissioners in imposing, any sum of money for damages to be done by an improper construction of the railroad thereafter. The presumption was that the railroad would properly construct its road, and hence no damages could properly have been awarded for injuries that could never occur, if appellant properly constructed its road. *Sinai* v. *Railway Co.*, 71 Miss., 547. We find no error in the case.

*Affirmed.*